[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 22, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-12323
Non-Argument Calendar

_____

D. C. Docket No. 05-61036-CV-DTKH

LUIS ARTIGA,

Plaintiff-Appellee,

versus

OFFICER RICHARD GARCIA,
2328,
GREGORY SALADINO,
1704,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 22, 2008)

Before BIRCH, MARCUS and PRYOR, Circuit Judges.

PER CURIAM:

Officers Richard Garcia and Gregory Saladino appeal the district court's order denying their motion for summary judgment based on qualified immunity in this pro se civil rights action filed by Luis Artiga, pursuant to 42 U.S.C. § 1983, alleging use of excessive force during an arrest. Appellants contend that they are entitled to qualified immunity with respect to Luis Artiga's sole surviving claim related to the time subsequent to his initial confinement in Officer Garcia's patrol car.[1] After careful review, we affirm.

We review de novo a district court's entry of a summary judgment motion based on qualified immunity, applying the same legal standards as the district court. See Lee v. Ferraro, 284 F.3d 1188, 1190 (11th Cir. 2002). We resolve all issues of material fact in favor of the plaintiff, and then determine the legal question of whether the defendant is entitled to qualified immunity under that version of the facts. Id.

A government official who is sued under § 1983 may seek summary judgment on the ground that he is entitled to qualified immunity. Holloman ex rel.

---

[1]The district court entered summary judgment on Artiga's other § 1983 claims, for false arrest and malicious prosecution, based on qualified immunity. Artiga has not raised any challenge to the rulings on these other claims. Accordingly, such claims are abandoned. See Horsley v. Feldt, 304 F.3d 1125, 1131 n. 1 (11th Cir. 2002) (concluding claim not raised on appeal abandoned).

2

<u>Holloman v. Harland</u>, 370 F.3d 1252, 1263 (11th Cir. 2004). As we observed in

<u>Lee v. Ferraro</u>:

> Qualified immunity offers "complete protection for government officials sued in their individual capacities as long as 'their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Thomas v. Roberts</u>, 261 F.3d 1160, 1170 (11th Cir. 2001) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982)) (additional quotations omitted). The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, <u>see</u> <u>Anderson v. Creighton</u>, 483 U.S. 635, 638, 107 S. Ct. 3034, 3038, 97 L. Ed. 2d 523 (1987), protecting from suit "all but the plainly incompetent or one who is knowingly violating the federal law." <u>Willingham v. Loughnan</u>, 261 F.3d 1178, 1187 (11th Cir. 2001). Because qualified immunity is a defense not only from liability, but also from suit, it is "important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." <u>GJR Invs., Inc. v. County of Escambia</u>, 132 F.3d 1359, 1370 (11th Cir. 1998) (citation omitted).

284 F.3d at 1193-94. To be eligible for qualified immunity, the official must first

establish that he was performing a "discretionary function" at the time the alleged

violation of federal law occurred. <u>Holloman</u>, 370 F.3d at 1263-64. Here, there is

no question that the officers were engaged in a discretionary function -- they were

in the process of making a lawful arrest.

Once the public official has established that he was acting within the scope

of his discretionary authority, the burden shifts to the plaintiff to establish that

qualified immunity does not apply. <u>See</u> <u>Lee v. Ferraro</u>, 284 F.3d at 1194. To

3

determine if the plaintiff has met his burden, we apply the Supreme Court's two-part test for evaluating a claim of qualified immunity: (1) "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" and (2) if a constitutional right would have been violated under the plaintiff's version of the facts, the court must then determine "whether the right was clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001); Holloman, 370 F.3d at 1264.

The district court found the following:

> It is amply clear, as to the first alleged use of force which involved attempting to drag the handcuffed Artiga to a police car after he had been arrested and admittedly refused to walk, and then apparently involved the use of a mace-like chemical agent in order to make Artiga comply with verbal orders to approach and enter the police car, that the defendant officers are entitled to qualified immunity. (As to this incident, the plaintiff acknowledged at deposition that in light of his admitted resistence, this was the only thing the officer could have done to safely make him comply. It appears the use of force was applied for the purpose of making the arrestee Artiga comply with a lawful order to approach and enter a waiting police vehicle, that the use of force was necessary under the circumstances, and that the amount of force which was applied was measured, i.e., the minimum amount necessary to facilitate placement of the resisting arrestee into the police car).

> With respect to the uses of force which are alleged to have occurred after Artiga's initial placement in a police vehicle, however, it is apparent, based on the evidence of record, that there are genuine issues of material fact, the existence of which precludes summary judgment. These include genuine issues regarding the nature and extent of force used by the officers, and which officer or officers used

4

it; the nature and extent of any resistence which may have been offered by the plaintiff. . . ; whether any such resistance offered by the plaintiff had ceased at such time that the alleged uses of force by officers applied; and finally, the nature and extent of injuries sustained by the plaintiff and whether or not they were self-inflicted, the result of a trip and fall, or caused by force applied by the defendant officers.

The district court's identification of genuine issues of material fact concerning the claim for the alleged use of excessive force after Artiga's initial placement in Officer Garcia's patrol car is entirely consistent with the Supreme Court's totality-of-the-circumstances analysis of such qualified-immunity issues: the amount of force that a police officer reasonably can use without being excessive depends on the totality of the circumstances, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. 386, 396 (1989).

The district court also properly applied our most pertinent caselaw on the use of excessive force against handcuffed or unarmed defendants, prior to concluding that genuine issues of material fact precluded the entry of summary judgment based on qualified immunity. In Vinyard, we held that an officer was not entitled to summary judgment based on qualified immunity, even though caselaw had not previously addressed the particular fact pattern presented, where the officer maced and bruised a disorderly conduct arrestee, who was handcuffed and cursing

5

in the patrol car while being transported to detention. Vinyard, 311 F.3d at 1347-49, 1355; see also Lee, 284 F.3d at 1198-1200 (concluding that, although the officer was authorized to use a reasonable amount of force to effectuate the arrest, the officer's use of force after the arrest, which included slamming the arrestee's head against the trunk after she was subdued and in handcuffs, was clearly unnecessary and disproportionate); Slicker v. Jackson, 215 F.3d 1225, 1232-33 (11th Cir. 2000) (denying qualified immunity to officers, who slammed a disorderly conduct arrestee's head into the pavement and repeatedly kicked him, "even though he was handcuffed and did not resist, attempt to flee, or struggle with the officers in any way").[2]

Again, at the summary judgment stage, Artiga's version of the facts must be accepted as true. Lee v. Ferraro, 284 F.3d at 1190. According to Artiga, after he was handcuffed and placed in Officer Garcia's patrol car, the officers ordered him out of the car, at which point Officer Saladino punched Artiga in his right eye, causing him to collapse and sink to his knees, and Officer Garcia subsequently picked him up off the ground and slammed his face into the rear windshield.

---

[2] We are unpersuaded by the officers' argument that Artiga more closely resembles the plaintiff in Willingham, in which we concluded that officers, who shot an unarmed woman, were entitled to qualified immunity because the shots were within a "split-second" of her attempting to assault and kill the officers. See 321 F.3d at 1303. Artiga, who was handcuffed, maced, and not resisting arrest at this point, did not present a comparable threat to the threat posed in Willingham.

Artiga says he then lost consciousness. When he regained consciousness, Officer Saladino maced Artiga's injuries, eyes, and mouth and forced him into another patrol car. On this record, the district court did not err by concluding, in light of our caselaw, that the officers were not entitled to qualified immunity as to the excessive-force claim based on the incidents after Artiga was placed in Officer Garcia's patrol car. Artiga's evidence, which must be believed at the summary judgment stage, would demonstrate a violation of his clearly established rights for purposes of the qualified immunity analysis. See Vinyard, 311 F.3d at 1347-49, 1355; Lee, 284 F.3d at 1198-1200; Slicker, 215 F.3d at 1232-33.

**AFFIRMED.**